IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER

Civil Action No. 18-cv-00860-MSK-STV

TERESITA REYES,

    Plaintiff,

v.

COLORADO DIVISION OF RECLAMATION MINING AND SAFETY,
JEFF FUGATE,
CHARLES KOOYMAN,
CAMILLE MOJAR, and
KNOX PIT HEARING BOARD CHAIRMAN,

    Defendants.

___

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
___

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 28)**, Ms. Reyes' *pro se*[1] response **(# 34 and others)**, and the Defendants' reply **(# 37)**. On June 13, 2019, the Court issued an order **(# 49)** converting the Defendants' motion to one for summary judgment under Fed. R. Civ. P. 12(d), inviting the parties to submit any additional evidentiary material they desired. The parties did so **(# 51, 53, 54)**. Also pending are Ms. Reyes' various motions requesting leave to amend her Complaint **(# 29, 30, 33)**, a motion by Ms. Reyes seeking to restrict access **(# 32)** to Docket # 31, and a motion by Ms. Reyes to appoint *pro bono* counsel to assist her **(# 52)**.

---

[1]     Due to Ms. Reyes' *pro se* status, the Court has construed her filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

## FACTS

Ms. Reyes is a resident of La Porte, Colorado. In or about September 2017, the Loveland Ready Mix Cement Company applied to the Colorado Division of Reclamation, Mining, and Safety ("DRMS"), seeking a permit to conduct mining activities at a location in LaPorte known as the Knox Pit.

Because significant aspects of this case involve the process by which public is permitted to provide input into DRMS decisions, the Court will pause intermittently in its factual recitation to address the pertinent components of that process. The DRMS' regulations at issue here are embodied in a series of rules found at 2 CCR 407-4. Rule 1.6.1(2)(d) provides that DRMS notifies the public of a mining application by, among other things, publishing a notice in a newspaper of general circulation. The record reflects that DRMS published notice of the Knox Pit application via classified ads places in the Fort Collins *Coloradoan* on various dates in October 2017, including October 19, 2017. By operation of Rule 1.7.1(2)(a), members of the public had 20 days from the date of the last publication of the legal notice to submit written comments to DRMS. The parties here appear to agree that November 8, 2017 was the deadline for the submission of such comments.[2]

Ms. Reyes did not learn about the Knox Pit application until November 6, 2017, only two days before comments were due. Ms. Reyes scrambled to prepare a written comment, completing it and mailing it out on November 7, 2017. DRMS received Ms. Reyes' comment on

---

[2] In some of her filings, Ms. Reyes appears to calculate the deadline in some other (unclear) way and argues that the deadline passed in early October 2017. Nevertheless, both sides generally treat the November 8, 2017 deadline as correct and based on its own calculation of 20 days from October 19, 2017 – the last apparent date in the record for which a classified ad is published – the Court finds it materially undisputed that November 8, 2017 as the correct deadline.

November 9, 2017, but because Rule 1.7.1(2)(a) provides that "written comments . . . must be <u>received</u> by the Office" by the deadline, DRMS deemed her comment untimely.[3] (Emphasis added.)

Under DRMS regulations, the submission of a timely comment has certain beneficial consequences. A person who submits a timely comment may thereafter be deemed a "party" – that is, "a person who demonstrates that they are directly and adversely affected" by the proposed mining operation. Rule 1.1(36). As discussed herein, persons with party status as to an application have certain rights and benefits that are not afforded to non-parties. Because DRMS rejected Ms. Reyes' comment as untimely, Ms. Reyes did not have party status with regard to the Knox Pit application.

DRMS, through its entity the Mined Land Reclamation Board ("the Board"), scheduled public hearings on the Knox Pit application to be held at the DRMS offices in Denver. On January 11, 2018, Ms. Reyes wrote to DRMS, stating that she is "elderly and disabled" and subject to a "mobility impairment" that requires her to rely on the services of a driver. She explained that these circumstances "make[ ] driving long distances a challenge." She stated that she intended to attend the public hearings on the Knox Pit application, but because of her disability, she was concerned that travel to Denver would be difficult. She thus requested that the DRMS "transfer venue" of the public hearing "from Denver to Fort Collins." It does not appear from the record that DRMS responded immediately to Ms. Reyes on this issue, but at a February 21, 2018 Board meeting, the Board considered a "request for board hearing to be held in Fort Collins, Colorado regarding the Knox Pit permit application." By unanimous vote, the

---

[3] It is not clear from the record whether DRMS immediately notified Ms. Reyes that it was rejecting her comment as untimely. The record does not appear to reflect any further communications on this issue except as is discussed herein.

Board denied the request to move the hearing. On March 1, 2018, Jared Ebert, a representative of DRMS, wrote to Ms. Reyes explaining that "the Board did consider your request to move the hearing," but "did not think it would be feasible," as "there are a number of hearings scheduled that day regarding mine sites located throughout Colorado." Mr. Ebert also advised Ms. Reyes that although DRMS regulations "do not specifically allow for telephone or remote participation in the hearing . . ., the Board did direct me to work with you specifically so that you can participate over the phone should you like." Mr. Ebert also mentioned that "the entire board meeting can be live streamed from our website."

Meanwhile, Ms. Reyes embarked upon efforts to appeal or seek reconsideration of DRMS' determination that she was not entitled to party status. On various dates in early March 2018, Ms. Reyes wrote to Jeff Fugate, a Deputy Colorado Attorney General and the DRMS' legal representative, explaining her disability and requesting that the DRMS waive the untimeliness of her comment and grant her party status regarding the Knox Pit application. Mr. Fugate responded with an explanation of why Ms. Reyes' comment was deemed untimely and advised her that, pursuant to Rule 2.6, she could file a request with the Board to be granted party status notwithstanding her late comment.[4] Although the record does not contain a formal request by Ms. Reyes to the DRMS under Rule 2.6, evidence in the record suggests that she formally requested to be granted party status.

---

[4] Ms. Reyes' Amended Complaint alleges that Mr. Fugate told Ms. Reyes that she could file an appeal of the rejection of her comment with Charles Kooyman (ultimately identified as the Board's attorney) or Camile Mojar (ultimately identified as the Board's secretary). Ms. Reyes alleges that she filed such appeals but received no response, and she thereafter named Mr. Kooyman and Ms. Mojar as Defendants in this action. The factual record does not contain any evidence of Ms. Reyes contacting either Mr. Kooyman or Ms. Mojar; at most, Mr. Fugate's March 7, 2008 e-mail to Ms. Reyes simply mentions that "any motions or requests to be served on the Board should be sent to" Ms. Mojar and Mr. Kooyman.

4

The Knox Pit application was formally considered by the Board at a public hearing in Denver on March 21, 2018. In a Pre-Hearing Notice, which essentially set the agenda for the March 21 hearing, 12 individuals with party status were identified as "Objectors," along with an entity known as the "No Laporte Gravel Corp." (of which Ms. Reyes appears to be a member or affiliate). Two of the Objectors (including the No Laporte Gravel Corp.) were listed as intending to call witnesses, and an additional Objector was indicated as intending to offer exhibits. The schedule proposed that, after the applicant made a presentation, the Objectors would have afforded 3.5 hours, apparently collectively, to present witnesses and exhibits. Thereafter, a "non-party public comment period" would occur, in which non-parties would have a total of 20 minutes, with an apparent limit of 5 minutes per person, to address the Board. (The Objectors had an additional opportunity to make closing and rebuttal statements.)

Mr. Reyes attended the March 21 hearing in person. According to the transcript of that hearing, one of the first orders of business undertaken by the Board at the hearing was consideration of a "request for party status that was received from Ms. Tess Reyes." The Board heard a short argument from Ms. Reyes, in which she explained that she thought that having her comment postmarked before November 8, 2017 would be sufficient to render it timely. A Board member inquired whether Ms. Reyes desired to provide testimony at the hearing, and Ms. Reyes responded that she would appreciate an opportunity to do so. Asked how much time she would need for that presentation, Ms. Reyes responded "whatever you allocate, I'll try to fit it. I can do it in 15 minutes or maybe less." Mr. Fugate gave a response on behalf of the DRMS, opposing Ms. Reyes' request to be designated as a party but he noted that the agenda for the hearing included the allotment of 20 minutes for comments by "nonparty interested persons." Mr. Fugate explained that "really, that was included in this prehearing order for Ms. Reyes to provide

her [an] opportunity to present her concerns or comments to the Board within the hearing, but she would still be . . . legally recognized as a nonparty interested person." The Board inquired of Mr. Fugate whether the DRMS' position was that Ms. Reyes would be limited to only 5 minutes of speaking and Mr. Fugate responded "I would leave that to the Board's discretion. I'm not sure how many other non-party interested persons are planning to appear. The Division wouldn't object to providing her more time." The Board ultimately voted to deny Ms. Reyes' request for party status, but to allow her to speak during the non-party time period, with the Board stating that "when we listen to the non-party objectors . . . we can make a decision then" about whether Ms. Reyes could be given more than 5 minutes to speak.

The record reflects that four non-parties, including Ms. Reyes, spoke at the hearing. The transcript of the hearing does not reflect how long Ms. Reyes spoke, but there is no indication in the record that the Board prevented her from completing whatever presentation she wished to make. At the conclusion of the hearing, the Board voted to approve the Knox Pit project.

Based on these facts, the Court previously construed Ms. Reyes to assert the following claims: (i) violation of Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12132 *et seq.*, against DMRS arising from its refusal to relocate the Knox Pit meeting(s) to Fort Collins, Colorado to accommodate her disability; and (ii) a claim under 42 U.S.C. § 1983, sounding in deprivation of procedural Due Process under the 5th and 14th Amendments, against Mr. Fugate, Mr. Kooyman, and Ms. Mojar.

The Defendants move for summary judgment **(# 28)** against Ms. Reyes on all of her claims, arguing: (i) that Ms. Reyes' Title II claim fails because it was the Board, not the DRMS, that decided not to move the hearing; (ii) that Eleventh Amendment immunity bars Ms. Reyes' ADA claim against the DRMS; (iii) that DRMS sufficiently accommodated Ms. Reyes'

6

disability by offering to permit her to appear by telephone and by granting her an opportunity to address the Board even though she was not a party; (iv) that Ms. Reyes' § 1983 claim against the individual Defendants fails because none of those Defendants personally participated in any deprivation of Ms. Reyes' constitutional rights; and (v) to the extent that Ms. Reyes states a constitutional claim against any of the individual Defendants, those Defendants are entitled to qualified immunity because the contours of such a constitutional claim are not "clearly established."

## ANALYSIS

### A. Preliminary matters

Ms. Reyes has filed several motions that are appropriate to consider before the Court addresses the Defendants' motion.

First, Ms. Reyes has three pending motions **(# 29, 30, 33)** that seek to amend her Complaint. Docket # 29 appears to request leave to add six additional causes of action: that DRMS denied her a reasonable accommodation of her disability in violation of 28 C.F.R. § 35.130(b)(7)(i) and 28 C.F.R. § 31.130(c), that DRMS excluded Ms. Reyes from participating in public programs because of her disability, that as used a "method of administration" discriminated against Ms. Reyes because of her disability, that it imposed eligibility criteria upon Ms. Reyes that prevented her from enjoying equal benefits to non-disabled individuals, and that it provided an "unequal opportunity to obtain the same level of achievement" as non-disabled commenters are the hearing.

Docket #30 purports to be a motion to add another cause of action, "violation of 28 CFR 35.101 – Purpose and Broad Coverage," but does not contain any substantive discussion or an

articulation of the proposed new claim. Rather, the document appears to consist entirely of supporting exhibits.

Finally, Docket # 33 proposes to add the Board itself as a Defendant in the case. Like Docket #30, this motion does not contain any substantive content or the text of any claim that Ms. Reyes wishes to assert against the Board. Rather, the entire substantive content of the motion consists entirely of Ms. Reyes request to "include [the Board] as respondents in the case."

Fed. R. Civ. P. 15 provides that leave to amend should be "freely granted." However, the Court may deny leave to amend if the proposed amendment is futile, such that even the amended pleading would be subject to dismissal. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013). As discussed in more detail below, the Court finds that Ms. Reyes has not come forward with any evidence that the DRMS discriminated against her because of her disability or failed to accommodate her disability in a way that prevented her from commenting on the Knox Pit application in the same manner as any able-bodied person. All of Ms. Reyes' proposed amendments are futile as they would be subject to summary judgment in favor of the Defendants.

Moreover, as to Docket # 30 and 33, the motions are further denied for failure to comply with D.C. Colo. L. Civ. R. 15.1(b). That rule requires that any motion to amend a complaint contain a copy of the proposed amended complaint, allowing the Court to review and evaluate the particular language of the proposed new claim. Ms. Reyes' failure to tender the contents of her proposed amended complaint with regard to the claims in these motions further requires those motions to be denied. Accordingly, all three motions to amend are denied.

Ms. Reyes has also filed a motion captioned "Motion for Discovery and Scheduling Conference" **(# 45)**. Much of this motion is a substantive response to the Defendants' summary

8

judgment motion, and the Court has considered those arguments in that capacity. But in deference to Ms. Reyes' *pro se* status, the Court also considers portions of the motion to possibly be: (i) a request to amend the complaint to include a claim that "the DRMS and all its attendees had breached the Plaintiff's spouse, Pedro Reyes', personal information" as well as Ms. Reyes' "personal financial data"; and (ii) a request, pursuant to Fed. R. Civ. P. 56(d), for an opportunity to conduct discovery prior to consideration of the Defendants' summary judgment motion. As to the request to amend, the Court denies it for failure to comply with Local Rule 15.1(b).[5] The Court further notes that Ms. Reyes lacks standing to pursue any claim that her husband's personal information was compromised.

As to the request for leave to conduct discovery, Fed. R. Civ. P. 56(d) provides that where a summary judgment respondent "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" take a variety of actions, including allowing the respondent an opportunity to take discovery before the summary judgment motion is considered. A respondent seeking relief under Rule 56(d) must indicate: (i) the probable facts that are unavailable, (ii) state why these facts cannot be presented without additional time, (iii) identify past steps taken by the movant to obtain the facts, and (iv) state how additional time would allow for the respondent to marshal the facts and respond to the summary

---

[5] The contours of this putative claim are hinted by Exhibits 6-A and 6-B attached to Docket #51. Those pages appear to show screenshots of Mr. Reyes attempting to type his credit card information into a web form. A cursor is shown in the "address" field and a dropdown box appears to offer the user certain pre-filled options for completing that field, among them "2805 Fairview Drive" (presumably the Reyes' street address), and text reading "All attendees of the Division of Reclamation & Mining...." Ms. Reyes seems to believe that this is evidence that unspecified participants in the March 21 hearing have "hacked" into her computer or credit card account. It seems highly likely that this is simply an error by Mr. Reyes' web browser in attempting to populate a form field with text that Mr. or Ms. Reyes has typed in other web forms in the past.

judgment motion. *Viking Ins. Co. v. Baize*, 753 Fed.Appx. 549, 557-58 (10th Cir. 2018). To the extent that Ms. Reyes is suggesting that she requires additional discovery before responding to the Defendants' motion, she has not addressed the elements required above. Indeed, Ms. Reyes' motion seems to indicate that she has a wealth of specific information (*e.g.* the Larimer County Planning Commission Packet, of which she references specific page numbers; data regarding the number of comments received by DRMS, the dates they were received, and how many were rejected as untimely) that does not otherwise appear in the record. Accordingly, the Court denies the motion to the extent it requests leave under Rule 56(d).

Finally, Ms. Reyes moves for the appointment of *pro bono* counsel to assist her **(# 52)**. The Court previously denied **(# 24)** a similar motion, noting that Ms. Reyes "is capable of adequately presenting her position with regard to the issues in this case." The Court remains of the opinion that Ms. Reyes has been able to adequately marshal her factual presentation and legal arguments and does not require *pro bono* legal assistance. Moreover, because the Court finds, as discussed herein, that judgment in favor of the Defendants is appropriate, there is no need for *pro bono* counsel to assist Ms. Reyes further in this case.

Accordingly, the motions at Docket # 29, 30, 33, 45, and 52 are denied.

### B. The Defendants' motion

#### 1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that

must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

    2. Title II claim

Ms. Reyes' claim against DRMS arises under Title II of the ADA.  In pertinent part, that statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.  To establish a claim under Title II, Ms. Reyes must come forward with evidence that: (i) she is a qualified individual with a disability; (ii) she was excluded from participation in or denied the benefits of a public entity's activities; and (iii) that such exclusion or denial was by reason of her disability.  *Hockaday v. Colorado Dept. of Corrections*, 766 Fed.Appx. 572, 574-75 (10th Cir. 2019).  She may also show that the public entity "knows that the individual is disabled and requires an accommodation to participate in or receive the benefits of its services."  *Id.*

Here, the Court will assume that Ms. Reyes is a qualified individual with a disability, that the DRMS is a public entity, and that participation in the notice and comment process of the DRMS is an activity of that entity.  But Ms. Reyes fails to state a cognizable claim because she has not come forward with evidence that she was excluded from participating in the notice and comment process in any way because of her disability.

Reduced to its essence, Ms. Reyes' claim arises from two adverse decisions by the DRMS: (i) the rejection of her written comment as untimely, and (ii) the refusal to grant her party status for purposes of the March 2018 public hearing.[6]  Nothing in the record indicates that

---

[6] One might argue that DRMS' decision not to move the public hearing to Fort Collins to accommodate Ms. Reyes' disability would be a third adverse decision.  But Ms. Reyes ultimately chose to travel to Denver for that hearing and appear in person, rendering any discussion of the adequacy of the DRMS' proposed telephone and video accommodations moot.

12

either decision was based on her disability, nor that she required any accommodation to meaningfully avail herself of DRMS' notice and comment process. She appeared at the meeting of the Board and had ample opportunity to make her positions known.

The record is clear that DRMS rejected the comment because the comment was received by DRMS after the November 8, 2017 deadline. As noted above, Rule 1.7.1(2)(a) states that a comment must be <u>received</u> by DRMS by the deadline, not simply <u>postmarked</u> by that date. Ms. Reyes argues at some length that the DRMS should instead apply the "Postal Rule of Acceptance" that deems the date of mailing, not the date of receipt, to be operative. To be sure, the law has adopted this rule (often referred to as the "mailbox rule") in certain contexts. *See e.g. Republic of Sudan v. Harrison*, 139 S.Ct. 1048, 1057 (2019) (adopting mailbox rule for determining when a contractual offer has been accepted); Fed. R. App. P. 4(c)(1) (adopting prison mailbox rule for determining when a prisoner's Notice of Appeal is deemed filed). But the mailbox rule is not universal, and there are many circumstances where a document mailed prior to a deadline but received after the deadline will be deemed untimely. *See e.g. Mapu v. Nicholson*, 397 F.3d 1375, 1379 (Fed. Cir. 2005) (appeal to Veteran's Court must be <u>received</u> by deadline, unless the sender complies with a specific statutory provision governing postmarks); *Stewart v. U.S. Veterans Admin.*, 722 F.Supp. 406, 408 (W.D.Tn. 1989) (request for reconsideration of FTCA denial postmarked within six-month period but received by agency after six-month deadline deemed untimely). Here, the DRMS regulations unambiguously reject the mailbox rule and require a written comment to be <u>received</u>, not simply postmarked, within the 20-day period, and DRMS is entitled to apply that rule as written.

Not only does the record fail to contain evidence that Ms. Reyes' inability to meet the November 8, 2017 deadline was in any way related to her mobility impairment, Ms. Reyes' own

13

evidence rebuts such proposition. In Docket # 54, Ms. Reyes compares her own situation with that of Erica and Piers Daniell, who also prepared and dispatched a written comment about the Knox Pit mine on November 7, 2017. As Ms. Reyes points out, the Daniells "sent [their] letter by Priority Express Mail," causing that letter to arrive at DRMS by the November 8 deadline, whereas Ms. Reyes mailed her letter by regular mail. *See* Docket # 54, Ex. 9-B (Daniell letter stamped by DRMS as received on Nov. 8). Ms. Reyes notes that the Daniells were afforded party status as a result of their timely written comment. This suffices to prove the point: it was not Ms. Reyes' disability that prevented her from timely submitting her comment, but rather, her choice of a slower mail service when the deadline for submitting comments was looming. Regardless of how difficult it might have been for Ms. Reyes to get from her home to the Post Office on November 7, that difficulty had no bearing on her comment being rejected. Once at the Post Office, had Ms. Reyes chosen to send her comment by overnight mail instead of regular mail, her comment would have been received by the DRMS in time and she would have obtained party status. It is clear that the untimeliness of her comment was not connected to her disability in any way.

Once it is accepted that Ms. Reyes tendered an untimely comment for reasons unrelated to her disability, the remainder of her claim fails as well. Because her comment was late (for reasons unrelated to her disability), she was not eligible for party status. Without party status (for reasons unrelated to her disability), she was not automatically entitled to present testimony and exhibits at the March 2018 public hearing. And nothing in the record indicates that the Board, in deciding to reject her Rule 2.6 request for party status, did so because of her disability. Indeed, the record appears to reflect that although the Board chose not to afford party status to Ms. Reyes, it utilized a method designed especially to give her the opportunity to speak as a non-

14

party, and Ms. Reyes appears to have used that opportunity to say all that she wished to say. Thus, nothing in the record indicates that DRMS discriminated against Ms. Reyes because of her disability or failed to provide her with an accommodation so that she could participate in the hearing on equal terms with any able-bodied person who had failed to file a timely comment.

Accordingly, the Court finds that DRMS is entitled to summary judgment on Ms. Reyes' Title II claim.

### 2. Due Process claim

Ms. Reyes' § 1983 claim against the individual Defendants sounds in violation of Procedural Due Process. To establish a Procedural Due Process claim, Ms. Reyes must come forward with evidence that: (i) she possessed a constitutionally protected liberty or property interest in a thing; (ii) that a rule or regulation provided her with a certain process that would be observed before that liberty or property interest could be denied; and (iii) that she was not afforded the process guaranteed. *See Couture v. Board of Education*, 535 F.3d 1243, 1256 (10th Cir. 2008). Notably, however, Ms. Reyes asserts her Due Process claim against the individual Defendants. Thus, she is required to show that each Defendant personally participated in the denial of the procedural rights to which she was entitled. *See e.g. Dill v. City of Edmond*, 155 F.3d 1193, 1207 (10th Cir. 1998).

The Court will assume, without necessarily finding, that Ms. Reyes had a liberty interest in participating in the public comment process concerning the Knox Pit application. The Court will also assume, without necessarily finding, that the notice received by Ms. Reyes about the Knox Pit application was defective in one or more respects.[7] But nothing in the record indicates

---

[7] Ms. Reyes notes that the public notice published in the newspaper did not contain the deadline for filing written comments, an apparent violation of Rule 1.6.2(1)(d)(vi). But that rule makes clear that the public notice is drafted and published by <u>the applicant</u>, not by the DRMS.

that any of the named Defendants here – Mr. Fugate, Mr. Kooyman, Ms. Mojar, or the unidentified Board Hearing Chairman – had any involvement in, much less responsibility for, the process of notifying Ms. Reyes or others about the Knox Pit application. The precise roles of each of the individual Defendants in the Knox Pit application process are not clear from the record, but Ms. Reyes has not come forward with any evidence suggesting that these particular Defendants were responsible for issuing notice of the application, drafting and publishing the newspaper ad, or otherwise verifying that the notice that was given was correct. Moreover, the Court notes that there is almost no evidence in the record in which Ms. Reyes or anyone else even notified anyone at DRMS or the Board – much less the named Defendants herein – of any concerns about the adequacy of the public notice.[8] Accordingly, Ms. Reyes has failed to come forward with evidence that any of the named Defendants personally participated in any denial of her Due Process rights.

For these reasons, the Defendants are entitled to summary judgment on both of Ms.

---

Thus, none of the Defendants, all of whom are associated with the DRMS, can be said to bear responsibility for the defects in the newspaper notice.

[8]    Docket # 51, Ex- 1-A and 1-B includes an October 7, 2017 e-mail from a Terry Waters to a number of recipients – mostly Larimer County officials, but certain additional individuals with e-mail addresses ending in state.co.us (including Jared Ebert, but not any of the named Defendants here) – mentioning concerns about "citizens not receiving public hearing phase notifications." Exhibit 1-C is a single page from a larger document bearing the heading "No Gravel Laport and its members are aggrieved." The document mentions that "the newspaper notice of this application is defective," mentioning the defect noted in the footnote above. The author and recipients of this document are unidentified.

Ultimately, the record does not reflect whether the concerns about the adequacy of the public notice were raised to the Board as part of the March 21, 2018 hearing or otherwise, nor how the Board responded. The Court notes, however, that for the reasons set forth above, there is no evidence that Ms. Reyes was in any way prejudiced by the newspaper ad's failure to contain a deadline for submitting responses. It is undisputed that: (i) Ms. Reyes nevertheless knew that November 8, 2017 was the deadline, and (ii) mailed a comment on November 7, mistakenly believing that the postmark, not the date of receipt, would determine the comment's timeliness. Thus, even if the public notice had fully complied with the Board's rules, Ms. Reyes' actions and the consequences that flowed from them would not have been different.

Reyes' claims.

**C. Motion for Leave to Restrict**

Finally, Ms. Reyes moves (**# 32**), pursuant to D.C. Colo. L. Civ. R. 7.2, to restrict access to her Exhibits 3-C and 3-D, as found in Docket #31. That document is Jared Eber's Certificate of Service listing the names and addresses of persons upon whom the DRMS sent a "Notice To Parties and Interested Persons to the Knox Pit" in November 2017. Ms. Reyes moves to restrict access to the document to "help protect the privacy of individuals named" in the list and to "withhold from general public view the addresses of individuals named in the said list."

The Court will not repeat the familiar standards that govern motions to restrict, except to summarily note the strong interest that the public has in accessing documents that are presented to and considered by the Court. At the same time, there is minimal public interest in materials that are filed with the Court that are irrelevant to the Court's substantive determination. *See e.g. Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752, 755 (10th Cir. 2009). Admittedly, there is also a relatively low privacy interest in the concealment of the addresses of the various individuals listed in Exhibits 3-C and 3-D, insofar as individuals addresses are often matters of public record and could be readily obtained through any manner of public records requests (including a request upon the DRMS for the very document in question). Ultimately, because the names and addresses of the individuals involved was not relevant to the issues before the Court here, the Court finds that the minimal privacy interest articulated by Ms. Reyes is sufficient to overcome the minimal public interest in access to the document. Thus, the Court grants Ms. Reyes' motion and Docket # 32 will remain under public restriction.

The Court also, *sua sponte*, imposes an additional restriction on public access. Docket #51, Exhibits 6-A and 6-B, are the aforementioned screenshots of Mr. Reyes' credit card

information. The Court finds that the publication of Mr. Reyes' credit card number and expiration date implicates a strong private interest for which there is no legitimate countervailing public interest in access, insofar as Mr. Reyes' actual credit card number is not material to the proceedings before the Court. The Court has *sua sponte* prepared a redacted version of Docket #51 that conceals that credit card information and directs that the Clerk's Office file that redacted version of Docket #51 and place the original Docket #51 under a Level 2 restriction.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 28)** is **GRANTED**. The Clerk of the Court shall enter judgment on behalf of all Defendants on all claims in this case. Ms. Reyes' Motions to Amend **(# 29, 30, 33)**, Motion for Discovery **(# 45)**, and Motion for Appointment of *Pro Bono* Counsel **(# 52)** are **DENIED**. Ms. Reyes' Motion to Restrict Access **(# 32)** is **GRANTED** and Docket #31 shall remain under a Level 1 restriction.

The Clerk of the Court shall place Docket #51 under a Level 2 restriction and shall publicly file the redacted version of Docket #51 that the Court has provided.

Dated this 29th day of July, 2019.

                                              **BY THE COURT:**

                                              Marcia S. Krieger
                                              Senior United States District Judge